At this time, the Court will call Case No. 5-160427, Borgsmiller v. Borgsmiller. Borgsmiller v. Borgsmiller May it please the Court, my name is Harold, I'm representing Elaine Borgsmiller. The parties in the briefs, and I think even the trial court referred to as Elaine and Dirk. I represent Elaine, she represents Dirk. I must be spending most of my time exclusively on the issue of whether the college fund was depleted. I think on the other issues, I think they've been adequately briefed. Of course, if we've got any questions about those, we can go ahead and field them. The parties were awarded a judgment of dissolution of marriage in January 2013. At that time, there was $108,669 in a college fund, and Dirk was basically awarded control of that fund. It is not disputed that it was called the Edward Jones, it was an Edward Jones. It's not disputed that Dirk had exclusive control over that fund. He made all the decisions as to withdrawals, where the money would go, etc. Although we testified in a hearing that Edward Jones didn't have the capacity to wire money out to colleges, in fact, it did, and there are a small number of wire transfers from the Edward Jones funds to the colleges that Elaine, and there is an excuse, he should get credit for that. The problem that we have is, and there's three children, the oldest is Carl, the middle child is Erica, and the youngest child is Kurt. At the time that the judgment was entered, only Carl was in college, and Dirk testified that there was enough money to pay for Carl's education, part of Erica's, and then the fund had been depleted, and when it came time for Kurt to go to college. There isn't any dispute between the parties that the fund is, in fact, depleted. You just look at the Edward Jones statements, and it says zero. It is depleted. The question is, all right, was the money spent for college education? Now, here's where I think Dirk ran into very serious problems, because what he did, he would withdraw money out of the Edward Jones fund, he would deposit it into a bank account, the bank department, which was his personal account, and he even testified that there were substantial amounts of virtually most of the withdrawals coming out of his own personal account, but for his own personal expenses. So then the question is, well, then, how do you show that the $108,000 that came out of the Edward Jones fund was used for college? Now, when we analyzed the briefs and the position that was taken, because we basically took the position that a trial court says, look, there's about $20,000 that can't be explained, and they realized they had a problem, because at the end of the hearing, Mr. Reed stands up and realizes there's a problem, asks for a continuance so we can go out and gather additional documentation to explain what we think is a rather convincing testimony, there's a $20,000 discrepancy. Well, the judge basically said, no, we gave Dirk 21 days to supplement the record and gave us 14 days to respond. I would have said, well, wait a minute, if we're going to get additional documents, I'd like to at least make a deposition of Dirk so I can cross-examine about this, and the judge declined that, and that's one of the issues that we've raised, and I'm going to spend time on that. Now, all of the documentation that Dirk subsequently submitted didn't have anything to do with the college fund. He had, there was another fund that he indicated that there was money that was used, but he didn't prove it in terms of all he said. There was a fund, and at one point in time, Carl's name was on one of the accounts, but it was very quickly taken off. So we're back to the issue. What happened to $108,000? It was in the Edward Jones fund. Now, I filed a motion to publish one of the exhibits. I don't know, do you have that in front of you? I'd like to give it to you, to be honest, because it's kind of important. Can I have a close look at it? Yes, I don't see it. There was, for the record, there was a motion to publish. And counsel has a copy. Counsel, he has a copy. Yes, oh, yes, you've got a copy. Now, if you look at Dirk's brief, there's a discrepancy in terms of our starting position. He basically indicates that he took an analysis, and there was about $18,000 worth of money that was before the dissolution of marriage. But he comes up in his brief, and he says, well, we know that $89,440 was paid for college education. There is a discrepancy of about $400 with regard to our computations, but I'm not going to argue about that, because it's just, we're not going to have time to explain that $400. But if you look at his brief at page 9, they want to take $13,600 plus another $13,626. We're told $27,226 they want to add to the $89,000. Now, what I'd like to do, Your Honor, is if we could turn to the motion to publish, and it's on the base number or on the court number SPB1237, a page that looks like this. It's the second actual page of what was their demonstrative exhibit. Now, you look at the second column there under Error, and you see two days, July 16, 2013, $13,600. January 10, 2014, $13,626 for a total of $27,226. They want credit for that. Now, this was introduced as a demonstrative exhibit. Now, here's the problem they've got. Okay? At the hearing, I assume that they're saying this is an American Express credit card. Okay? I don't know, but I assume that is the case. At the hearing, they didn't introduce the American Express credit card statement. When they had 21 days to supplement, they didn't introduce the American Express credit card statement. The judge only introduced this as a demonstrative exhibit. Now, how? And they argue in their brief that they're entitled to $27,226 credit. Why? Just because they put it in a demonstrative exhibit without the supporting documentation? And I, you know, I read this. I struggled with this because it was very frustrating to us how the trial judge could have made a finding that this fund, that Dirk has actively addressed all of these problems when, in fact, he hasn't. Okay, well, then there's another $1,500 plus $15 charge that they claim in their brief that they're entitled to. Now, that's not on the demonstrative exhibit, okay? But if you turn to the appendix, A129, you will see reference to that $1,500 plus $15. You'll see it in there. And I've got it here. It's A129. It's at the very bottom here. And that's the problem with their bank statements. It just says outgoing wire. There isn't the supplementary document. There's not even a written notation in there. In other words, this is Dirk's private bank account for which he has control, with which he has commingled the assets that were designated for his children. So they just make this statement in their brief, well, that Dirk should get credit for this $1,500 plus another $15, and that money went for college. Well, why? Look at the exhibit, A129. There's nothing in this bank statement that justifies that conclusion, yet they argue in their brief that they're entitled to $1,500 plus another $15 service. Counsel, is this? Yes. So this A29, is this one of the documents that was introduced later or was testified to at trial? It was introduced into evidence by us. We got the documents in discovery. My client went through and analyzed all the documents and testified, and they are right. We didn't give them credit for that $1,500 plus another $15. We didn't give them credit. Why shouldn't we have given them credit? But sure, they were introduced into evidence without objection, and it was only later on, and frankly, I think in this brief, that they are arguing that they're entitled to that credit. Certainly, there was nothing in the presentation made to the judge about that $1,500. Well, then, let's move on. If we could get back to the demonstration exhibit, the same thing. I'm getting frustrated here, Your Honor. It was a pretty good catch. I'm a horrible basketball player. So let's move on to S.E., back to the same page, 1237. Let's look over the next column here. There we have Carville, and in their brief, they want to get credit for, looks like American Express again, or I'm not sure, it's AX over to the right, then it says U of I, and there's $200 on 5-16, 5-6, 2015, and then June 27, 2015, 2733, U of I. That's in their demonstration exhibit, okay? Same problem. Where is the backup? It's just a statement they put together off the top of their head that the judge introduced as a demonstration exhibit, and in their brief, they want to get credit for 2933. It's in their written page 9. They're arguing in front of this court that they want credit for that amount of money. And no matter how you cut it, they don't get credit, shouldn't get credit. It's not the best evidence. It's hearsay. It's just demonstrative evidence. They shouldn't get credit for the $27,226. They shouldn't get credit for the $1,500 plus $50, and they shouldn't get credit for the 2933, and that's the problem with their bank statements. They want to get credit. All they have is the bank statements. They gave them in discovery. No massive checks, nothing written to the University of Illinois. Every time there was a wire transfer that went to one of the schools, we gave them credit for that, and there were wire transfers out of Edward Jones. We gave them credit for that. There were wire transfers out of the Bank of Carville. We gave them credit for that. We even gave them credit for $5,100 in checks, although we didn't have the checks, but my client was able to independently verify that those expenditures were made. We didn't even have to do that, but we did. We could have erased the technical objection, and I don't think they should have given us checks for that, but we did because, in good faith, we made an independent investigation. No matter how you cut it, they're $20,000 short. Okay, did Dirk testify? Hey, I spent $1,500. Yeah, I don't have the American Express statements here, but I spent $1,500 for my child. Was there testimony to that? No, there was not, Your Honor. In fact, when they, either at the hearing or in the affidavit later, did Dirk go through and try and explain where this money went? I think he may have tried to testify that all of these expenditures went for college, but I objected at that point, and the objection was sustained and was admitted as a demonstrative exhibit. One other problem they got, also, with the charge, the 2933, they filed a motion for secondary education that my client contributed. They alleged in October 2014 that the account was depleted. That's a false allegation. McQuee, of course, denied that. But look, if you look at this demonstrative exhibit here, those charges were made in May and June of 2015. Now, they're saying they want credit for that, and they're arguing in their brief. They're arguing that 2933 was part of the 108,000 when they filed pleadings in October of 2014, saying the fund was depleted. Now, this is very important because I don't know whether or not, eventually, Dirk, out of his own funds, has paid for the college education, but the judge issued an order saying that my client had to contribute from the date of the filing of the motion, and at a minimum, they should have to go back in his place. So just so you understand, Dirk is taking $108,000 above the money from his own personal account, right, coming off of his own funds, claims just from memory from a demonstrative exhibit, then every penny of that that went into his own personal account was paid for college. So no checks, no wire transfers, no nothing. There's $20,000 he cannot explain, didn't explain in the trial court, didn't explain subsequently when he was allowed to introduce additional documents, and it's not explained here. May it please the court, counsel. My name is Darryl S. Reed. I practice with the firm Reed Heller, and I have two other brothers who are here in Illinois. I represent the petitioner, Abilene Dirk Gordsmill. I want to start on the point raised by the appellant in this case as to the court's adopting the accounting and what it did with that. The court admitted a number of documents submitted by the respondent in this case and based upon those, the respondent testified that she'd done a forensic accounting of these records and drawn certain conclusions. The court had very little information about the defendant respondent in terms of her qualifications to do a forensic accounting, and this is going to be important as I continue. The court only knew about the respondent that she was Mr. Donnell's secretary and that she did clean offices for a secondary income. They had no information about her level of education. They had no information about any accounting education. They had no information about her experience in accounting, her background in education in forensic accounting, or her experience in forensic accounting. The appellant produced to the court selected documents that had been produced in discovery by the appellee that verified the amounts that were shown on the summary. I want to jump ahead a minute because counsel argued specifically about American Express charges that totaled over $27,000 that were on the summary, and he suggested there were no documentation submitted to verify that. I would refer the court to the respondent's exhibit that is labeled H3 and specifically pages 8 and 9 of that exhibit, which are bursar records for the child attending Loyola University. If the court looks at those records, each of those two show a payment. It shows the date of payment that corresponds to the date on the summary. It shows payment in excess of $13,000 on each of those two dates. It shows the payment was made by a credit card. That was within their own exhibits. That should have been seen in a forensic accounting. Now, I confess the credit card statement was not produced, but the court should also be aware that we weren't aware until we showed up at trial that this was even going to be an issue. A petition for post-high school educational support had been filed. There was never a response filed. There were never affirmative defenses filed, like we acknowledge that the account is completed, but you have a separate allegation that those funds were used exclusively for college, and we deny that, and here's our affirmative defense. We walked into this hearing not knowing that we were going to present this argument or these documents. Not that that's positive, but in terms of what we came into and what we were ready to address at the hearing, but specifically on these $27,000 that they talked about American Express charges on the summary that have no other supported document. The supported documents are on the exhibit submitted by the respondent. The bursar statements are there. They give the same date. They give the dollar amount with a little bit of variance. I think one of the dollars was $13,400. He put $13,600 on his exhibit. Other than that, they match up. The other thing that's missed entirely with this accounting question is it's not disputed that over $130,000 was paid for these children's education, well in excess of the fund. That's set out in this file of exhibits. That's supported by all the documents, the bank records, the wire transfers that are a part of, again, respondents' exhibits submitted to the trial court. So we start out where everybody from the records showed that more of that was spent in the account. I stumbled over the word ambush, but we had no idea that we were going to be dealing with this issue at trial because there was no response file. The court had ample information in front of it as well as, frankly, the qualifications of the respondent to even provide a forensic accounting. This kind of leads us to another argument of respondent, and that is they suggest that this case should be reversed because at the close of his case, before any rebuttal was offered, the court was asked to submit additional documents, additional bank statements, and other statements that had been produced to the respondent in discovery but had not been a part of what they handed to the court. As indicated, the court said these documents could be submitted. Counsel asked for an opportunity to take a deposition if you wanted, and the court said no. These documents went in without the ability of the respondent to cross-examine the custodian of the records. Respondent was given the opportunity to submit any documents he had that did not support or did not agree with what we provided. Instead, he submitted a letter of over three pages. The first page and a half argued about his case in terms of the accuracy of the summary that was presented, and the next page and a half went into something else. In terms of submitting these documents and his inability to cross-examine them and the impact of that, his brief calls these documents irrelevant. So it's kind of you didn't have a chance to examine them, but you called them irrelevant anyway. But as pointed out in his brief, it's the Illinois Supreme Court base that discusses the right, the fundamental right to cross-examination and how if that right is not provided, it creates some very serious problems. However, the conclusion of that case is not cited in his brief because the court went on to say in this case the failure to provide cross-examination was harmless error. In that case, a child's representative filed their written report. The statute specifically says you can't call them as a witness. The injured party said it should be reversed. She has a right to call. The court said you haven't shown any prejudicial effect. You haven't shown to have any impact on the outcome. Hence, it's a harmless error. In their reply brief, respondents suggest that it's a burden on us, on the appellee, to show no prejudicial effect and to show an effect to the outcome. That's simply not what the court in Bates said. In that case, Norma was the mother who was complaining about the evidence, and the court said Norma has not demonstrated a consideration of the report by the court was prejudicial or even had an effect on the outcome. It's obvious that the burden would be on her, and the Supreme Court said that in 2004 in making the decision. We submit to the court that the failure or the inability to cross-examine was harmless error. Number one, the appellant's whole conclusion in his mind was irrelevant. Number two, no prejudicial effect has been shown. And number three, there's been no showing that it affects the outcome of the case. What's interesting on this issue is another issue raised by the appellant, and that is they complain that the trial court did not consider the monies that his client had contributed prior to our court date to the children's college education. The reason this issue is interesting and intertwined is this three-page letter that I mentioned he submitted after documents were submitted by us, the last page and a half talked about something that wasn't even presented at any hearing and had nothing to do with the documents we presented. Attached to that letter and the remaining part of the letter were exhibits, I think they were P through W inclusive, which were bank statements, credit card statements, all kinds of documents produced by the respondent to show what she had allegedly paid for these children's college education before our court date. Now, I hadn't even seen these documents before they were submitted after the hearing. I certainly had no opportunity to cross-examine them, and that is portrayed on the other issue as my fundamental constitutional right. Yet these exhibits are listed each individually on page 22 of the brief as if this is information the court should have considered but didn't. These documents were never authored into evidence. They were never rejected. They were simply attached to a letter, and yet he wants this court to look at those documents to form the basis to reverse the decision because the trial court did not give proper credit to the respondent for the money she may have spent prior to the hearing. They also complained in their brief that the court did not find that there had been or there had not been a change in circumstances to even address the college question. As a preliminary looking at the pleadings and at the judgment, the judgment never assessed the college expenses between the parties. The judgment of dissolution never said there was an account that you get to manage, but it never said, Mom, you should pay something. Dad, you should pay something. So in essence, this was more of a 513 petition to establish child support, more than a 510 to modify. Modify would imply the court had already allocated these expenses and now wanted to do something different at the request of the parties. But beyond that, to the change of circumstances, it's uncontroverted that these children started out with a college account of $108,000. It's uncontroverted that one has not completed college and one is starting college and the account is now empty. It's uncontroverted that the money that the parties had for these children in college had been spent. Now, we might argue whether it was spent properly or not, but again, the one thing we know is that over $130,000 has been spent and the account only had $108,000. Thank you. We ask the court to affirm the decision of the trial court. We believe that based upon the evidence that was offered, there has been more than an adequate accounting of how the $108,000 was spent on the children's college. There's been no showing that any of it went to any improper source or that it was not paid for the children's college expenses. We ask you to affirm the trial court. Thank you. Thank you, counsel. Well, let me start out with the reference, and it's in Articulate H3. The numbers just don't match. What I find interesting about it is that this, you know, he complains about being ambushed. They didn't make this argument in their brief. They didn't point to H3. They didn't cite to the record. They didn't make the argument that that's where that $26,000 can be found. So they're waiting for the first time in oral argument. Well, even if you do that, that they're not even in the ballpark in terms of it's approximately $26,000, but it's not a reference to a credit card. And here's the point. The judge gave him 21 days to produce the credit card statement, and he didn't. And so now they still haven't done it, and they want you to assume, Your Honor, that that credit card statement, there's a charge in that credit card statement to I think it would be Loyola University. I just don't see how you can do it. I don't think it's fair. They didn't make any first time on appeal. They're arguing, Well, my client isn't qualified to do an forensic accounting. They didn't object to that in trial. They didn't object in their brief. All she did was take the documents that they supplied, get out an adding machine, and explain what the money added up to. It's not that difficult. I'm not a forensic accountant. It's an analysis that we were able to get. They complain about the fact that we asked for $51,000 to be considered with regard to charges that we made. We'll be glad, Your Honors, to withdraw that argument if in fact they don't get put into any of their documents whatsoever because what they did produce in the 21-day interval was a completely different account, which we didn't. It wasn't given us in discovery, wasn't introduced at trial, and we were not given an opportunity to explain to the judge why that account should be counted at all. The simple fact of the matter is, nowhere in the judge's finding that the account was depleted are you going to see how he got to that conclusion. Now, the concern was, well, this is really a petition for support. The original judgment did not specifically apply. I have a provision for college education support one way or the other. What it did say is that Dirk had control of this account. And so now they say this is not a modification. Well, of course it's a modification because the original judgment didn't provide for it. If you look at 513J, it lists a number of factors, no evidence introduced showing how those factors should be met. The burden is on them. It's not on Wayne. And I ask that you take that into consideration. Thank you. Thank you, counsel. The court will take this matter under advisement and render a decision in due time.